[No. B112606. Second Dist., Div. Four. Dec. 1, 1997.]

FLOVEYOR INTERNATIONAL, LTD., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SHICK TUBE-VEYOR CORPORATION, Real Party in Interest.

## COUNSEL

Wilson, Elser, Moskowitz, Edelman & Dicker, Patrick M. Kelly and George A. Pisano for Petitioner.

No appearance for Respondent.

Murchison & Cumming, Friedrich W. Seitz and Bryan M. Weiss for Real Party in Interest.

## OPINION

**VOGEL (C. S.), P. J.**—Petitioner Floveyor International, Ltd., a British corporation (Floveyor), filed this proceeding to challenge the denial of its motion to quash the service of summons and cross-complaint filed by the real party in interest, Shick Tube-Veyor Corporation (Shick), on the grounds (1) the service of summons and cross-complaint failed to conform with the Hague Convention,[1] and (2) the California courts have no jurisdiction for lack of minimum contacts.

[1]The Hague Convention is a treaty to which the United States is a signatory. Its formal name is Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638. For convenience, we will refer to it as the "Hague Convention" or the "Convention."

## FACTUAL AND PROCEDURAL BACKGROUND

Quality Naturally! Foods, Inc. (QNF), not a party to these proceedings, ordered and received a bulk conveyor system designed and manufactured by Shick. The system purportedly failed. QNF filed and served a first amended complaint against Shick alleging tort and contract claims. Shick answered and filed a cross-complaint against Floveyor for indemnity. Shick contends that a component installed in the system, a metal cable, was manufactured by Floveyor and caused the failure triggering QNF's lawsuit.

QNF and Shick settled the matter as between them and Shick took steps to serve a summons and the cross-complaint on Floveyor in England in accordance with the provisions of the Hague Convention. On October 30, 1996, Shick filed proof of service on a director of Floveyor by way of a certificate of service executed by and bearing the seal of The Senior Master's Department of the Supreme Court of England and Wales. Floveyor did not file an answer and its default was taken on October 30, 1996. On February 7, 1997, Shick moved for entry of a default judgment in the amount of $438,754.58.

On February 26, 1997, Floveyor specially appeared and filed a motion to set aside the default judgment and a motion to quash Shick's service of summons and the cross-complaint.[2] The basis for the motion to quash was: Shick had the burden of proving (1) the validity of service and (2) that Floveyor had sufficient contacts with the State of California to confer personal jurisdiction. The trial court granted the motion to vacate the default judgment, but denied Floveyor's motion to quash.

On June 6, 1997, Floveyor filed this petition for writ of mandate contending that the trial court decided the motion to quash incorrectly as a result of imposing the burden of proof on it to show some defect in the service of process and that California did not have jurisdiction.

## DISCUSSION

The primary issue raised in the trial court and here is, who has the burden of proof on the issues of the validity of the service of process and the sufficiency of minimum contacts with the State of California to support jurisdiction over Floveyor. Indeed, Floveyor contends that the burden is on Shick and for that reason it did not produce any admissible evidence "demonstrating the invalidity of the service and the lack of minimum

---

[2]Floveyor's motion to vacate the default judgment pursuant to Code of Civil Procedure section 473 did not constitute a general appearance invalidating its motion to quash. (Code Civ. Proc., § 418.10, subd. (d).)

contacts." Shick's position is that a defendant who moves to quash service has some minimal obligation to show in what way the service of process is deficient and that jurisdiction is otherwise lacking. The trial court was persuaded by Shick's argument: "But, you've [Floveyor] got to tell the Court if they, if they don't have minimal contact in California, then why they don't, what facts there are in regard to the—what's wrong with the service. At least trigger something to put [them] on the defensive."

The trial court's conclusion is erroneous. ■ "In the absence of a voluntary submission to the authority of the court, compliance with the statutes governing service of process is essential to establish that court's personal jurisdiction over a defendant. . . . When a defendant challenges that jurisdiction by bringing a motion to quash, the burden is on the plaintiff to prove the existence of jurisdiction by proving, inter alia, the facts requisite to an effective service. . . ." (*Dill* v. *Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1439-1440 [29 Cal.Rptr.2d 746], citations and fn. omitted.)

Shick attempts to distinguish *Dill* v. *Berquist Construction Co.* and the authorities on which the decision is based. In substance, Shick makes much of the fact that those precedents involved circumstances where the defendants moving to quash service supported the motion with proof of defective service or lack of minimum contacts. (*Dill* v. *Berquist Construction Co.*, *supra*, 24 Cal.App.4th 1426, 1433 [defendants argued that "Dill had failed to deliver the summons to any of the individuals listed in section 416.10, which specifies the individuals who may be served on behalf of a corporation"]; *Taylor-Rush* v. *Multitech Corp.* (1990) 217 Cal.App.3d 103, 110 [265 Cal.Rptr. 672] ["While a return receipt signed by someone authorized by a nonresident defendant to sign for his mail is sufficient, the plaintiff must provide separate evidence establishing the authority of the person who signed the return receipt on defendant's behalf."]; *Sheard* v. *Superior Court* (1974) 40 Cal.App.3d 207, 210-211 [114 Cal.Rptr. 743] ["We also note, preliminarily, that where a defendant properly moves to quash service of summons the burden is on the plaintiff to prove [the] facts requisite to the effective service."]; *Coulston* v. *Cooper* (1966) 245 Cal.App.2d 866, 869 [54 Cal.Rptr. 302] [The president of the defendant corporation filed a declaration that the defendant was located in Arizona engaged in the rental car business, and its rental contracts prohibited its customers from driving its vehicles in California.].) Notwithstanding the factual issues raised by the moving defendants in each of those cases, their central holding is that the plaintiff bears the burden of proof on the validity of service *and* the court's jurisdiction over the defendant. The controlling rule is succinctly stated in *Coulston* v. *Cooper*: "A defendant who takes the position that the service of summons as

made upon him did not bring him within the jurisdiction of the court, may serve and file a notice of motion to quash the service. [Citation.] The effect of such a notice is to place upon the plaintiff the burden of proving the facts that did give the court jurisdiction, that is the facts requisite to an effective service." (245 Cal.App.2d at p. 868.) Until Shick makes at least a prima facie showing of the validity of service and sufficient contacts with the State of California, Floveyor may stand mute, as it did here.

## VALIDITY OF SERVICE

■  Because Floveyor is a British corporation located in England, Shick was required to serve it there pursuant to the provisions of the Hague Convention.[3] (See in general *Volkswagenwerk Aktiengesellschaft* v. *Schlunk* (1988) 486 U.S. 694, 699 [108 S.Ct. 2104, 2108, 100 L.Ed.2d 722]; *Shoei Kako Co.* v. *Superior Court* (1973) 33 Cal.App.3d 808, 812-822 [109 Cal.Rptr. 402]; and Code Civ. Proc., § 413.10, subd. (c).) Failure to comply with the Convention renders the service void, even if the defendant has actual notice of the lawsuit. (See, e.g., *Honda Motor Co.* v. *Superior Court* (1992) 10 Cal.App.4th 1043, 1049 [12 Cal.Rptr.2d 861], and *Dr. Ing. H.C. F. Porsche A.G.* v. *Superior Court* (1981) 123 Cal.App.3d 755, 762 [177 Cal.Rptr. 155]; see also Service of Process Abroad: A Nuts and Bolts Guide, *supra*, 122 F.R.D. 63, 73.)

Shick's counsel mailed the summons and cross-complaint to APS International, Ltd., an entity apparently engaged in international lawyer support services, requesting service of the summons and cross-complaint on Floveyor in England.[4] APS responded by returning to Shick's counsel a "CERTIFICATE" stating, "The undersigned authority has the honour to certify, in conformity with article 6 of the Convention," that the summons and cross-complaint were served on the "14th August 1996" on "Floveyor

[3]The text of the Convention and declarations of the signatories can be found in 28 United States Code Annotated (1992 ed.) following Federal Rules of Civil Procedure, rule 4, commencing at page 210 and in Martindale-Hubbell International Law Digest (1997) commencing at page IC-1.

Useful guides include Siegel, Practice Commentaries in 28 United States Code Annotated (1992 ed.) following Federal Rules of Civil Procedure, rule 4, section C4-34 at pages 152-160, and Siegel, Supplementary Practice Commentaries in 28 United States Code Annotated (1997 pocket supp.) section C4-24, pages 64-70; Service of Process Abroad: A Nuts and Bolts Guide (1988) 122 F.R.D. 63; and Hague Conference on Private International Law, Practice Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (2d ed. 1992).

[4]Exhibit 2 to the petition includes the return cover sheet from APS International, Ltd., indicating that it sets up international depositions, obtains evidence abroad, translates documents, and provides service of process. It is signed by the representative of the international division.

International, Tundry Way, Cambridge Road, Blaydon, Tyne and Wear, NE 21, 5UB," and was delivered to the person of "Mary C. Horner," "Director" and is signed in "London the 23rd August 1996" with the seal of the "Senior Master's Dept. of the Supreme Court of England & Wales." It is obvious from the form and content of the certificate that it verifies that service was accomplished in accord with the provisions of the Hague Convention.[5] It is signed and sealed by the Senior Master's Department, Supreme Court of England and Wales, a designated Central Authority, under the terms of the Convention and the United Kingdom's declaration (1)(a) thereto, to accomplish service in Great Britain according to articles 2 and 18 of the Convention. Floveyor does not contend that the certificate is other than what it appears to be or is a false document.

Shick filed the certificate with its proof of service. The filing of a proof of service creates a rebuttable presumption that the service was proper. However, the presumption arises only if the proof of service complies with the applicable statutory requirements. (*Dill* v. *Berquist Construction Co., supra,* 24 Cal.App.4th 1426, 1441-1442; 1 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1997) §§ 4:148.2, 4:165, pp. 4-32.20, 4-32.23, rev. #1, 1997.)

Here service was made in England pursuant to the Hague Convention. Code of Civil Procedure section 417.20 provides: "Proof that a summons was served on a person outside this state shall be made: [¶] . . . [¶](c) Subject to any additional requirements that may be imposed by the court in which the action is pending, in the manner prescribed by the law of the place where the person is served for proof of service in an action in its courts of general jurisdiction . . . ." Therefore, California's law complements the operative provisions of the Hague Convention, article 5 and article 6, which provide in substance that the Central Authority shall complete a certificate in the form of the model annexed to the Convention when the documents (here the summons and cross-complaint) have been served by the method prescribed by the internal law of Great Britain for the service of documents in domestic actions upon persons within its territory. In other words, under the terms of the Hague Convention and in accordance with California law, the Senior Master of the Supreme Court of England and Wales may receive the summons and cross-complaint and cause it to be served in the manner provided by the laws of Great Britain and certify to that fact on the form provided for that purpose by the Convention. That is what happened here,

---

[5]Annex to the Convention, Forms, Certificate, reprinted in 28 United States Code Annotated (1992 ed.), following Federal Rules of Civil Procedure, rule 4, at pages 216-217.

and therefore, Shick's filing of the executed certificate created a prima facie showing that service of the summons and cross-complaint was valid.[6]

### PERSONAL JURISDICTION

As previously noted, Shick bears the burden of proof to show that all jurisdictional criteria are met, including proof that Floveyor's contacts with California are sufficient to pass constitutional muster. In responding to the motion to quash, Shick asserted that "Floveyor, while being a British company, distributes its products in the United States through various distributors, including Orthos, Inc., from whom Shick purchased the product in question. Shick purchased the product from Orthos for use in California." The only evidentiary support for this assertion is the March 24, 1997, declaration of Bryan M. Weiss, Shick's counsel, averring, "Discovery in this matter revealed that Shick purchased the product in question from a United States distributor of Floveyor's products, Orthos Inc. Shick is informed and believes that Floveyor uses other retail distributors in the United States." This declaration fails to support the assertions for which it is offered. It lacks foundation for the basis for the declaration and amounts to nothing more than inadmissible hearsay. Shick offered no other evidence in the trial court, but has proffered additional documents for the consideration of this court which purport to demonstrate Floveyor's contacts with California, none of which was presented to the trial court. We decline to consider Shick's supplemental material since in this writ proceeding we are proscribed by the same rules that govern appellate review: We can decide the cause based only upon the evidence presented in the trial court. (*People* v. *Superior Court*

---

[6]Article 5 of the Convention provides: "The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either— [¶] (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or [¶] (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed. [¶] Subject to sub-paragraph (b) of the first paragraph of this article, the document may always be served by delivery to an addressee who accepts it voluntarily. [¶] If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed. [¶] That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document."

Article 6 of the Convention provides: "The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention. [¶] The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service. [¶] The applicant may require that a certificate not completed by a Central Authority or by a judicial authority shall be countersigned by one of these authorities. [¶] The certificate shall be forwarded directly to the applicant."

(*Lavi*) (1993) 4 Cal.4th 1164, 1173, fn. 5 [17 Cal.Rptr.2d 815, 847 P.2d 1031]; *People* v. *Superior Court* (*Hartway*) (1977) 19 Cal.3d 338, 350 [138 Cal.Rptr. 66, 562 P.2d 1315].)

■ "A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' (*International Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]. . . .)" (*Vons Companies, Inc.* v. *Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) In *Stanley Consultants, Inc.* v. *Superior Court* (1978) 77 Cal.App.3d 444 [143 Cal.Rptr. 655], the court reviewed a denial of a motion to quash in a matter involving an alleged breach of an employment agreement that was negotiated by correspondence and telephone conversations and executed in Iowa. The defendant was an Iowa corporation. The plaintiff was able to show only that the defendant had performed some limited contract work in California about 10 or more years before entering the employment contract at issue. It was undisputed that the defendant had no office, assets, or licenses in California. In holding that California was without jurisdiction, the court cited *Hanson* v. *Denckla* (1958) 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283]: " 'However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him.' " (*Stanley Consultants, Inc.* v. *Superior Court*, *supra*, 77 Cal.App.3d at p. 449.) ■ Because the record before us is simply devoid of *any* evidence that Floveyor has *any contacts* with the State of California, we are compelled to find that the trial court abused its discretion in denying Floveyor's motion to quash.

## DISPOSITION

The petition for a writ of mandate is granted. The respondent court is directed to vacate its order of May 20, 1997, denying petitioner's motion to quash service of summons and to enter a new and different order granting petitioner's motion to quash service. Petitioner to recover costs.

Epstein, J., and Baron, J., concurred.